## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<u>NOT FOR PUBLICATION</u>

| | |
|---|---|
| B-JAYS USA, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>RED WING SHOE COMPANY,<br>INC.,<br><br>        Defendant. | Civil Action No.<br><br>2:15-cv-02182-SDW-SCM<br><br>**OPINION AND ORDER ON<br>DEFENDANT'S MOTION TO<br>TRANSFER VENUE**<br><br>**[D.E. 8]** |

### I.   <u>INTRODUCTION</u>

This matter comes before the Court upon Defendant Red Wing Shoe Company, Inc.'s Motion to Dismiss or Transfer Venue to the District of Minnesota. (ECF Docket Entry No. ("D.E.") 8). The Honorable Susan D. Wigenton, U.S.D.J., referred the motion to the undersigned for disposition in accordance with Local Civil Rule 72.1(a)(1). There was no oral argument. Upon consideration of the parties' submissions and for the reasons stated below, Defendant's Motion to Transfer venue is **GRANTED**. Defendant's Motion to Dismiss is administratively terminated as moot.

## II.  BACKGROUND AND PROCEDURAL HISTORY

This dispute arises out of a licensing agreement for the manufacture of footwear between B-Jays USA Inc. ("Plaintiff") and Red Wing Shoe Company, Inc. ("Defendant"). *See* Compl.(D.E. 1). Defendant is a manufacturer of footwear and holds trademarks associated with its products which it licenses to manufacturers. (Id. at 12). Defendant is a Minnesota corporation located in Minnesota. (Id.). Plaintiff is incorporated and headquartered in New Jersey and manufactures, distributes and sells footwear under license from Defendant. (Id). The contract at issue involves Plaintiff's agreement with Defendant to manufacture, market and sell footwear under Defendant's 'Vasque' trademark license. (Id.).

The agreement contains forum selection clause:

> The Agreement shall be considered as having been entered into in the State of Minnesota and shall be construed and interpreted in accordance with the laws of the State of Minnesota. Each party agrees to submit to the exclusive and personal jurisdiction of the federal and state courts in Ramsey County, State of Minnesota, for the resolution of any claim or dispute arising under this Agreement and waives any rights it may have to claim that litigation in the above court is not a proper venue or forum.

(D.E. 8-11 at 12).

In their Complaint filed on March 2, 2015 in the Superior Court of New Jersey, Plaintiff alleged that the Defendant wrongly terminated the parties' licensing agreement and asserted

several causes of action including breach of contract, breach of the implied covenant of good faith and fair dealing, and a violation of the New Jersey Franchise Practices Act ("NJFPA"). (D.E. 1 at 19-23). Defendant removed the state action to this Court on March 26, 2015 based on diversity. (Id. at 1). Defendant subsequently filed a motion to dismiss or transfer this case to the District of Minnesota on April 27, 2015. Plaintiff filed its opposition on May 18, 2015 and the Defendant filed its reply on May 26, 2015.

In support of its motion, Defendant argues that the Plaintiff's Complaint should be dismissed or transferred because the license agreement includes an enforceable and mandatory forum selection clause that manifests the parties' agreement and requires any lawsuit related to the agreement be venued in Minnesota. Defendant asserts that the forum selection clause should be enforced because it is not unreasonable, unjust, the result of fraud or overreaching. (D.E. 8-15 at 15). Moreover, although Defendant acknowledges that forum selection clauses in franchise agreements governed by the NJFPA are unenforceable because they violate New Jersey public policy, the Defendants argue that the license agreement here is not covered by the NJFPA.

In opposition, Plaintiff argues that venue is proper in this District and transfer to the District of Minnesota is

inappropriate because the NJFPA applies to the license agreement at issue and thus the forum selection clause is void under New Jersey's public policy.

## III. <u>DISCUSSION & ANALYSIS</u>

### A. <u>§ 636, Magistrate Judge Authority</u>

A motion to transfer a case to another district is considered a non-dispositive motion, which may be decided by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A). *See Siemens Fin. Servs., Inc. v. Open Advantage M.R.I. II L.P.*, No. 07-1229, 2008 U.S. Dist. LEXIS 15623, 2008 WL 564707, at *2 (D.N.J. Feb. 29, 2008). Further, the decision to grant or deny an application for transfer is discretionary. *Cadapult Graphic Sys. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000). Consequently, if such a decision is appealed, the district court must affirm the decision unless it is "clearly erroneous or contrary to law." *See Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).

### B. <u>§ 1404, Venue Transfer</u>

Defendant moves to transfer venue to the District of Minnesota pursuant to 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

4

"The purpose of §1404(a) is to avoid the waste of time, energy and money and, in addition, to safeguard litigants, witnesses, and the public against avoidable inconvenience and expense." *Rappoport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481, 497 (D.N.J. 1998). Transfer analysis under § 1404 is flexible and individualized, with no rigid rule governing a court's determination. *See Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988)); *Selective Ins. Co. v. Food Mktg. Merch., Inc.*, No. 13-cv-193, 2013 WL 2149686, at *3 (D.N.J. May 16, 2013) (internal citations and quotations omitted). A § 1404 analysis "turns on the particular facts of the case." *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 320 (D.N.J. 1998).

As a threshold matter, this Court must determine whether this action could have been properly brought in the District of Minnesota*. See LG Elecs. Inc. v. First Int'l Computer*, 138 F. Supp. 2d 574, 586 (D.N.J. 2001)(explaining that under section 1404(a), an action may be transferred to a district "where the action might have been brought for the convenience of parties and witnesses and in the interest of justice").

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the

claim occurred." 28 U.S.C. § 1391(a)(2). To determine whether subsection (a)(2) is satisfied, the Third Circuit "does not require a majority of the events to take place [in the district], nor that the challenged forum be the best forum for the lawsuit to be venued." *See Park Inn International, L.L.C.*, 105 F. Supp. 2d at 376 (citing *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)). "The statute only requires a 'substantial part' of the events to have occurred in the District to establish venue." *Id.*

In this action, Plaintiff does not dispute that the action "might have been brought" in the District of Minnesota. Defendant is a Minnesota corporation with its principal place of business in Minnesota. Indeed, an action enforcing the rights of the parties to this licensing contract has already been brought in the District of Minnesota and dismissed without prejudice under the "compelling circumstances" exception to the first-filed rule recognized in *Anheuser-Busch, Inc. v. Supreme International Corp.*, 167 F.3d 417 (8th Cir. 1999). The Court in that case requested this court perform an analysis of any relevant New Jersey law to determine the more appropriate forum. See *B-Jays USA, Inc. v. Red Wing Shoe Company, Inc.*, No. 15-cv-01223(PJS/LIB)(D.Minn.). Accordingly, the Court finds that this action could have been brought in the District of Minnesota.

Once venue of the transferee district is established under

§ 1391, a court must undertake a "flexible and individualized analysis," balancing the factors set forth in § 1404 and other case-specific factors. *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

In *Jumara*, the Third Circuit Court identified ten factors a court should consider to determine a more convenient forum. 55 F.3d at 879. These factors have been divided into two groups: (1) those related to the "private interests" of the parties in the context of the litigation; and (2) factors related to the "public interests" in the administration of the courts and the adjudication of cases. *See e.g., Liggett Group Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 528 (D.N.J. 2000).

When considering the private interests, courts are instructed to analyze: (1) the convenience and preference of the parties, including the plaintiff's choice of forum; (2) the convenience of witnesses; and (3) access to books and records. *Jumara,* 55 F.3d at 879. In this Circuit, the plaintiff's choice of forum is paramount. *See Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir. 1989). However, deference to the plaintiff's choice of forum is inappropriate where "the plaintiff has already freely contractually chosen an appropriate venue." *Jumara,* 55 F.3d at 880. Because "a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum," the presence of a contractual forum-

7

selection clause, while not dispositive, is a significant factor that is central to the Court's 1404(a) analysis. *Id.*

Since venue and the enforcement of forum selection clauses are procedural issues rather than substantive issues, "[i]n federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law." *Id.* at 877; *see also Wall Street Aubrey Golf, LLC v. Aubrey*, 189 Fed. Appx. 82, 84 (3d Cir. 2006)(not precedential).[1] In this Circuit, forum selection clauses are presumptively valid. *Id.* at 85 (citing *Costal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983). As such, the party resisting application of the forum selection clause bears the burden of making a "strong showing" that the clause is unreasonable and therefore unenforceable. *Cadapult*, 98 F. Supp. 2d at 565 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).

A forum selection clause is unreasonable if: (1) it is the result of fraud or overreaching; (2) its enforcement would violate strong public policy of the forum; or (3) its enforcement would in the particular circumstances of the case

---

[1] While federal law is applied when determining the effect of a forum selection clause, state law is applied when construing the terms of a forum selection clause. *See Wall Street Aubrey Golf*, 189 Fed. Appx. at 85; *Bel-Ray Co, Inc. v. Chemrite (Pty.) Ltd.*, 181 F.3d 435, 441 (3d Cir. 1999).

result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable. *Id.* (citing *Costal Steel*, 709 F.2d at 202); *see Jumara,* 55 F.3d at 880.

Here, the Plaintiff does not contend that the forum selection clauses are the result of fraud or over-reaching and while they contend that this District is a more convenient forum than the District of Minnesota, Plaintiff does not argue that venue in Minnesota would be unreasonable. Rather, Plaintiff contends the forum selection clause conflicts with the New Jersey Supreme Court's holding in *Kubis & Perszyk Assoc., Inc. v. Sun Microsystems, Inc.*, 146 N.J. 176 (1996) and violates New Jersey's public policy.

The *Kubis* Court held that "forum-selection clauses in franchise agreements [governed by the NJFPA] are presumptively invalid, and should not be enforced unless the franchisor can satisfy the burden of proving that such a clause was not imposed on the franchisee unfairly on the basis of its superior bargaining position." 146 N.J. at 195. Clearly however, *Kubis* only applies where a plaintiff asserts a valid claim under the NJFPA. *Cadapult*, 98 F. Supp. 2d at 564 n.2, 565 (stating "the rule of *Kubis* applies to valid Franchise Act claims, not claims outside of the Franchise Act").

Accordingly, the "New Jersey Supreme Court did not intend to extend *Kubis's* protection to non-Franchise Act cases." *Id.*

at 566. To determine whether the forum selection clause is invalid, the Court must first determine whether the license agreement at issue is covered by the NJFPA.

*N.J.S.A.* § 56:10-4, which governs the franchises to which the NJFPA applies, states that the Act only applies to

> a franchise (1) the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the State of New Jersey, (2) where gross sales of products or services between the franchisor and franchisee covered by such franchise shall have exceeded $35,000.00 for the 12 months next preceding the institution of suit pursuant to this act, and (3) where more than 20 percent of the franchisee's gross sales are intended to be or are derived from such franchise.

*N.J.S.A.* § 56:10-4(a). The plain language of the statue and the caselaw show that the statute requires the franchisee to satisfy all three components to be covered by the NJFPA. *See Dunkin' Donuts of Am., Inc. v. Middletown Donut Corp.*, 100 N.J. 166, 177-78 (1985)(stating "the express language of the Act discloses immediately that this franchisee does not fall under its protections [because] the Act applies only to those franchises under which gross sales of products or services between the franchisor and franchisee shall have exceeded $35,000 for the twelve-month period preceding the institution of suit . . ."); *Windsor Card Shops, Inc. v. Hallmark Cards, Inc.,* 957 F. Supp. 562, 569 n.11(D.N.J. 1997)(finding that the plaintiff could not

state a claim under the NJFPA because it failed to satisfy all of the § 56:10-4(a) requirements); *Finlay & Associates, Inc. v. Borg-Warner Corp.,* 146 N.J. Super. 210, 215-16 (Law Div. 1976)(requiring all three statutory conditions be established to obtain NJFPA protection).

Here, Plaintiff has elected to submit declarations regarding the agreements at issue and their transactions therefrom in opposition to the Defendant's motion and the Court therefore has before it an adequate record from which to determine if the NJFPA applies. Based on this record, the Court finds that NJFPA does not apply to the Plaintiff or the license agreement at issue.

While the record reflects that this contract dispute involves a business located in New Jersey, the record fails to demonstrate that the gross sales of products or services between the Defendant and Plaintiff exceeded $35,000 for the 12 months preceding the institution of suit. Although Plaintiff certified that "[d]uring the 12 months preceding [Defendant's] termination of the Agreement which led to the filing of the New Jersey Complaint, [Plaintiff's] gross sales pursuant to the Agreement far exceeded $35,000" and that "[s]ince the inception of the 2010 agreement, and in fact since 2000, [Plaintiff's] sales pursuant to the 2010 Agreement have constituted 100% of

[Plaintiff's] sales", the second prong of the NJFPA clearly requires that gross sales *between* the Plaintiff and Defendant exceed $35,000 not merely that the Plaintiff exceeded $35,000 in gross sales. (Haidar Decl. at ¶¶ 8, 9, D.E. 9-5 at 2,3). Indeed, the only fact offered that even suggests the second prong is met was the issuance of a $100,000 payment from Plaintiff to Defendant on August 4, 2014, however that payment was subsequently canceled by Plaintiff before it could be honored and does not represent a complete transaction. (Haidar Decl. at ¶ 19 (D.E. 9-5 at 5). The Court cannot ignore such a concession or a glaring absence of record.

For these reasons, the Court finds that the agreement at issue is not governed by the NJFPA and the public policy concerns articulated in *Kubis* are therefore not implicated. *See Cadapult*, 98 F. Supp. 2d at 565 n.3. Given the absence of the *Kubis* public policy concerns because there is no franchise before the Court protected by the NJFPA, and as there is no claim of fraud, overreaching, or unreasonable burden, the presumption of validity dictates that the forum selection clauses are valid and enforceable. *See id*. at 566-67.

Having determined that the clause is enforceable, the Court also finds that the clause embodied in the agreement is an exclusive forum selection clause. Unlike a permissive forum selection clause, which makes jurisdiction in a particular venue

12

appropriate, *see*, *e.g.*, *Koken v. Lexington Ins. Co.*, 2004 WL 2473432, at *3 (E.D. Pa. Nov. 2, 2004), the mandatory forum selection clause here requires that litigation arising from the transaction take place only in Minnesota, to the exclusion of any other jurisdiction. *See*, *e.g.*, *De Lage Landen Fin. Servs., Inc. v. Cardservice Int'l., Inc.*, No. CIV.A.00-2355, 2000 WL 1593978, at *2, n.3 (E.D. Pa. Oct. 25, 2000).

That said, the existence of an enforceable forum selection clause is relevant to only one aspect of the § 1404 analysis: the preference of the parties. Since only the "convenience of the parties is properly within the power of the parties themselves to affect by a forum-selection clause", the other private interest "must be weighed by the district court." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 757-58 (3d Cir. 1973) (footnotes omitted). Accordingly, the Court must also consider the remaining *Jamura* factors to determine if they also support transfer to the District of Minnesota.

The Court finds that the other two private interest factors, the convenience of witnesses and access to books and records, neither weigh in favor of nor against transfer. The record reflects that Plaintiff and Defendant both operate their businesses in their respective districts. *See* Haidar Decl. at ¶ 21 (D.E. 9-5 at 5); (D.E. 8-11 at 11). As such, these factors are in equipoise. Moreover, Plaintiff's argument that they will

be financially burdened by litigating this case in Minnesota is defeated by their agreement to an enforceable forum selection clause. *See Cadapult*, 98 F. Supp. 2d at 568 (stating the plaintiff "cannot now be heard to decry the resultant litigation expenses and inconvenience associated with transfer . . . By executing a forum selection clause, the parties to the agreement bear the risk of such inconvenience"). For these reasons, the private interest factors militate in favor of transfer to the District of Minnesota.

Turning now to the public interest factors, the Court must consider: (1) the enforceability of the judgment; (2) practical concerns that could reduce the time and expense necessary to resolve the claims at issue; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the *fora*; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara*, 55 F.3d at 879.

The Court finds the public interest factors, on balance, favor transfer. First, in the event Plaintiff prevails, it will be easier to obtain a judgment over the Defendant in Minnesota. *See United States ex rel Groundwater Technologies, Inc. v. Sevenson Envtl. Servs., Inc.,* 2000 WL 33256658 *5 (D.N.J.

2000)(recognizing that it is easier to enforce a judgment obtained in a defendant's home state). Moreover, to the extent Minnesota law may govern this dispute, the Court is confident that a court sitting in either district could accurately and competently apply Minnesota law to this dispute.  With respect to factors 2 and 4, *infra*, the Court finds that none of these factors weigh in favor of or against transfer as both forums have close ties to this action and thus have an interest in adjudicating this dispute. Accordingly, given the neutrality of the remaining factors, and in light of the Court's finding that transfer to the District of Minnesota will allow for easy, expeditious and less expensive litigation and will alleviate administrative difficulties, the public interest factors support transfer to the District of Minnesota.

## IV.  <u>CONCLUSION</u>

This Court concludes that venue in the District of New Jersey is improper, and in the interest of justice, transfers this case to the District of Minnesota.

For the foregoing reasons,

**IT IS** on this Tuesday, October 06, 2015,

1. **ORDERED** that Defendant's motion to transfer is **GRANTED**; and it is further

2. **ORDERED** that the Clerk of the Court shall transfer this action to the District of Minnesota; and it is further

3. **ORDERED** that Defendant's motion to dismiss, [D.E. 8] is administratively terminated as moot. *See* Fed. R. Civ. P. 83(b) and Local Civ.R. 83.3.



Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

10/6/2015 11:02:48 AM

Original: Clerk of the Court
Hon. Susan D. Wigenton, U.S.D.J.
cc: All parties
      File

16